No. 21-504

_____

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

_____

*IN RE JACOBS ENGINEERING GROUP, INC.,*
*PETITIONER.*

_____

**On Petition for Permission to Appeal an Order of the United States District Court for the Eastern District of Tennessee at Knoxville**
**Case No. 3:13-CV-00505; No. 3:13-CV-00666; No. 3:14-CV-00020; No. 3:15-CV-00017; No. 3:15-CV-00274; No. 3:15-CV-00420; No. 3:15-CV-00460; No. 3:15-CV-00462; No. 3:16-CV-00635; No. 3:16-CV-00636 (consolidated)**

_____

**REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)**

_____

Theodore J. Boutrous, Jr.*
Theane Evangelis
Peter S. Modlin
Diana M. Feinstein
Jeremy S. Smith
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, California 90071-3197
Telephone:  (213) 229-7000
Facsimile:  (213) 229-7520

Dwight E. Tarwater
Catherine W. Anglin
PAINE TARWATER BICKERS, LLP
900 S. Gay St., Suite 2200
Knoxville, Tennessee 37902-1821
Telephone:  (865) 525-0880
Facsimile:  (865) 229-7441

James F. Sanders
J. Isaac Sanders
William J. Harbison II
NEAL & HARWELL, PC
1201 Demonbreun St., Suite 1000
Nashville, Tennessee 37203-5078
Telephone:  (615) 244-1713
Facsimile:  (615) 726-0573

*Counsel for Jacobs Engineering Group Inc.*

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ........................................................................................1

ARGUMENT .............................................................................................2

I.      Jacobs' Motion Was Properly Presented to the District Court. ...........2

II.      Plaintiffs' Answer Confirms There Is Substantial Ground for Disagreement Regarding the Test for Derivative Immunity. ...............6

III.      There Is Substantial Ground for Disagreement on Whether the Six Theories of Liability Fall Outside *Yearsley* Immunity Under Either Standard. ...................................................................8

IV.      These Controlling Questions of Law Will Advance the Termination of the Litigation. ..........................................................10

CONCLUSION ..........................................................................................12

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adkisson v. Jacobs Eng'g Grp., Inc.* (*Adkisson I*),
　790 F.3d 641 (6th Cir. 2015) .................................................................. 6, 8, 11

*Andersen Corp. v. Fiber Composites, LLC*,
　474 F.3d 1361 (Fed. Cir. 2007) ............................................................. 5

*Campbell-Ewald Co. v. Gomez*,
　577 U.S. 153 (2016) .............................................................................. 1, 6, 8

*Carico v. Benton*,
　68 F. App'x 632 (6th Cir. 2003) ............................................................ 10

*City of St. Louis v. Praprotnik*,
　485 U.S. 112 (1988) .............................................................................. 6

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
　888 F.3d 640 (4th Cir. 2018) ................................................................ 6, 7

*Miller v. C.H. Robinson Worldwide, Inc.*,
　976 F.3d 1016 (9th Cir. 2020) .............................................................. 12

*Noble v. Brinker Int'l, Inc.*,
　391 F.3d 715 (6th Cir. 2004) ................................................................ 10

*Rodriguez v. Tenn. Laborers Health & Welfare Fund*,
　89 F. App'x 949 (6th Cir. 2004) ............................................................ 5

*Thacker v. Tenn. Valley Auth.*,
　139 S. Ct. 1435 (2019) .......................................................................... 2

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
　928 F.3d 42 (D.C. Cir. 2019) ................................................................ 6

*Wilburn v. Maritrans GP Inc.*,
　139 F.3d 350 (3d Cir. 1998) ................................................................. 9, 10

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
  516 U.S. 199 (1996) .......................................................................................4, 12

*Yearsley v. W.A. Ross Constr. Co.*,
  309 U.S. 18 (1940) ............................................................................................2

### Other Authorities

Exec. Order No. 12580 (1987) ................................................................................11

**INTRODUCTION**

Plaintiffs' Answer demonstrates why the district court was correct to *sua sponte* certify its order for interlocutory appeal and why Jacobs' Petition meets the criteria under 28 U.S.C. § 1292(b).  Not only do Plaintiffs *not* dispute there is substantial ground for disagreement on the governing test for derivative immunity, their Answer highlights that disagreement.  Plaintiffs describe the rule adopted by the Supreme Court in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), and recognized by the Fourth and D.C. Circuits as "illogical, artificially rigid," "absurd," and "problematic," and they fully embrace the district court's departure from this precedent.  Ans. at 17 & n.7.

Unable to dispute this stark divide on the proper standard and application of derivative immunity, Plaintiffs instead focus on irrelevant procedural issues and contend there would need to be "substantial additional fact-finding" even if Jacobs prevails (without identifying a single factual issue).  Ans. at 21.  As demonstrated below, Plaintiffs' Answer largely fails to address—much less rebut—Jacobs' showing that deciding the two intertwined legal questions presented by the Petition will likely end this case and related cases collectively involving 342 plaintiffs.  The criteria for interlocutory appeal are fully satisfied.

1

## ARGUMENT

### I.    Jacobs' Motion Was Properly Presented to the District Court.

Plaintiffs' primary argument against review under section 1292(b) is that the district court should not have considered Jacobs' motion for reconsideration and therefore (apparently) neither should the Sixth Circuit.   Ans. at 1–2, 10–16.  According to Plaintiffs, that is because:  (1) the Supreme Court's decision in *Thacker v. Tennessee Valley Authority*, 139 S. Ct. 1435 (2019), regarding TVA's immunity did not change the analysis for derivative immunity under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940); and (2) Jacobs waited too long to raise—and therefore waived—its argument that the district court's decision was contrary to binding precedent under *Campbell-Ewald*.  Ans. at 10–16.  Neither argument is correct or relevant to the section 1292(b) factors.

Jacobs sought reconsideration of the district court's prior immunity order on grounds that *Thacker* constituted an intervening change in law.  Mot. for Renewed JMOL, RE 545.  Plaintiffs argue that *Thacker* provided no basis for reconsideration, because the district court **could have** resolved Jacobs' claim for derivative immunity under *Yearsley* without reference to the discretionary-function exception that *Thacker* found inapplicable to TVA's immunity—and by extension to any derivative immunity Jacobs might enjoy as TVA's contractor.  Ans. at 10–12.

2

Plaintiffs' argument entirely ignores the fact that the district court *did* rely on the discretionary-function exception in considering *Yearsley* immunity at every stage of these proceedings.

In *sua sponte* certifying its order for appeal, the district court noted its previous reliance on the "discretionary-function exception" (that *Thacker* rejected) to "'inform[] the scope'" of derivative immunity under *Yearsley*.  Memo. Op. & Order, RE 759, PageID # 23096, 23110 (citation omitted).  Although the district court attempted to separate the inquiries in its order, it recognized this may not be possible, because "much of the presently available case law on this matter addresses *Yearsley* derivative immunity within the context of the discretionary function exception" and "*Thacker* could alter the entire *Yearsley* analysis."  *Id.* PageID # 23115 n.14.

Indeed, the district court's order denying Jacobs' 2016 summary judgment motion collapsed the now-rejected discretionary-function exception and the derivative-immunity analysis:  the court reasoned the "test set forth in *Campbell-E[]wald* is not applicable here" because TVA—and by extension Jacobs—"retains immunity only as its actions satisfy the *discretionary function* test."  Memo. Op. & Order, RE 137, PageID # 3593 (emphasis added).  And in ruling on Jacobs' post-trial

motions, the district court held that "discretionary-function immunity . . . informs the scope of *Yearsley* immunity."  Post-Trial Motion Order, RE 462, PageID # 15974.

So it was entirely proper for Jacobs to ask the district court to reevaluate Jacobs' derivative immunity without any reliance on the discretionary-function exception rejected in *Thacker*.

Even if the district court had not considered the discretionary-function exception in resolving derivative immunity, that would be irrelevant to whether interlocutory review is warranted.  This Court "may address any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.'"  *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (citation omitted).  The district court's order construed the test for derivative immunity under *Campbell-Ewald* in a manner conflicting with the Fourth and D.C. Circuits.  Interlocutory review of that dispositive legal issue is therefore proper, whether or not *Thacker* comes into play.

Similarly meritless is Plaintiffs' claim that Jacobs waived reliance on *Campbell-Ewald*.  Ans. at 13–16.  As the district court recognized, "Jacobs has repeatedly and systematically raised the issue of derivative immunity at nearly every stage of this litigation."  Memo. Op. & Order, RE 759, PageID # 23101.  And it is not true that Jacobs waited "some 1,597 days" to raise the *Campbell-Ewald*

4

decision. Ans. at 13–14. *Campbell-Ewald* was central to Jacobs' motion for summary judgment filed on May 27, 2016 (the deadline set by the district court), just 128 days after the Supreme Court ruled in *Campbell-Ewald*. Memo. ISO Mot. to Dismiss, RE 70 (converted to motion for summary judgment). Jacobs argued in *2016* that "[u]nder the *Campbell-Ewald* test, Jacobs is immune from third-party liability for the work it performs under the TVA contract, unless the plaintiff can establish that Jacobs acted contrary to specific or 'clearly established' government requirements." *Id.* PageID # 1208. The record refutes Plaintiffs' claims of waiver.[1]

Moreover, whether the district court should have reached the merits of Jacobs' motion has no bearing on whether interlocutory review is appropriate under the criteria established by section 1292(b). A district court has authority to "reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Because the district court chose to decide the merits of

---

[1] Plaintiffs' argument that Jacobs was required to object to the jury instruction is equally meritless. Ans. at 19–20. A party need not object to a jury instruction if, as was the case here, it already raised and lost the legal issue prior to the jury instruction. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 118–20 (1988); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1371 n.2 (Fed. Cir. 2007).

Jacobs' motion, the only question is whether the order satisfies the factors for interlocutory review under section 1292(b).  It does, as explained next.

## II.   Plaintiffs' Answer Confirms There Is Substantial Ground for Disagreement Regarding the Test for Derivative Immunity.

Plaintiffs do not dispute there is substantial ground for disagreement on the governing standard for derivative immunity.  Indeed, Plaintiffs' Answer highlights the divergence in views on the governing rule, further confirming this Court's statement that there is "uncertainty as to the scope of" derivative immunity. *Adkisson v. Jacobs Eng'g Grp., Inc.* (*Adkisson I*), 790 F.3d 641, 646 (6th Cir. 2015).

The Supreme Court held in *Campbell-Ewald* that the governing test for derivative immunity is whether the contractor violated "federal law and the Government's explicit instructions[.]" *Campbell-Ewald*, 577 U.S. at 166.  In Jacobs' view, this is the operative test—and the Fourth and D.C. Circuits agree. *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 646–47 (4th Cir. 2018); *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 69 (D.C. Cir. 2019).

The district court rejected that standard, instead holding that the governing standard is whether the contractor acted "contrary to the will of the government," which need not be a specific direction in a contract or law.  Memo. Op. & Order, RE

6

759, PageID # 23114. According to the district court, the language from *Campbell-Ewald* is not a holding, as the Fourth and D.C. Circuits recognize, but "merely a statement regarding the specific facts of the case." *Id.*

Plaintiffs' Answer reinforces this disagreement on the governing rule. Plaintiffs contend the district court's "contrary-to-the-will" standard must be right, because the test from *Campbell-Ewald* "would be illogical, artificially rigid[,] virtually impossible to meet," and lead to "obviously absurd" results. Ans. at 17. Plaintiffs further argue the "will of the government" test correctly captures "implicit" instructions and that "[a]n 'explicit instructions' test would require that government entities state an exhaustive list of pointless instructions to contractors about obvious, common-sense, safe behavior, or else derivative immunity would automatically attach." *Id.* at 17 n.7.

In fact, it is Plaintiffs' position on "implicit" instructions that would lead to "obviously absurd results." Plaintiffs appear to argue that a contractor should not be immune for negligence, because the government's "will" would never be for its contractor to be negligent. Ans. at 17 n.7. But it cannot be that a contractor loses immunity if it is found liable for negligence or another tort, because the very "purpose of *Yearsley* immunity is to prevent a government contractor from facing liability" in the first place. *See Cunningham*, 888 F.3d at 648. Under Plaintiffs'

7

argument, derivative immunity would only apply to a contractor that was not liable at all—rendering immunity meaningless.

Plaintiffs cannot point to a single case that supports the "will of the government" test. And the opposing views on the rule's contour show there is substantial disagreement on the governing test. The Court should seize this opportunity to align the Sixth Circuit with the Fourth and D.C. Circuits and make clear that the governing standard is whether the contractor violated "federal law and the Government's explicit instructions." *Campbell-Ewald*, 577 U.S. at 166. Doing so will eliminate the uncertainty "as to the scope of the" *Yearsley* decision this Court recognized in *Adkisson I*. 790 F.3d at 646.

## III.   There Is Substantial Ground for Disagreement on Whether the Six Theories of Liability Fall Outside *Yearsley* Immunity Under Either Standard.

Plaintiffs' Answer also confirms that whichever standard governs derivative immunity, there is substantial ground for disagreement over whether Jacobs is immune under the six theories of liability presented to the jury in Phase I.

Plaintiffs' Answer only addresses Jacobs' entitlement to immunity under *Campbell-Ewald*'s test for **one** of their six theories. Specifically, Plaintiffs claim that Jacobs' conduct violated the Site-Wide Safety and Health Plan's ("SWSHP") provision "encourag[ing]" the use of respirators. Ans. at 19. But even if Plaintiffs

were right about that one theory, a new trial would still be necessary because no one knows whether the jury believed that one (allegedly viable) theory as opposed to any of the other five theories that Plaintiffs concede, through silence, cannot meet the governing test. The barebones verdict form used in Phase I (*see* Pet. at 8) makes it "impossible . . . to decide which theory [or theories] of liability persuaded the jury." *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 366 (3d Cir. 1998).

Plaintiffs have not undercut the district court's conclusion that immunity is a "close call" even under the more malleable standard of "contrary to the will" of TVA. Here, too, Plaintiffs only claim that **one** of their six theories would constitute conduct "contrary to the will of the government"—*i.e.*, Jacobs allegedly telling personnel that fly ash was safe to consume. But as Jacobs explained in its Petition—and Plaintiffs have not disputed—the evidence at trial showed workers interpreted the comment about consumption of fly ash as a "joke," *see* Oct. 16, 2018 Trial Tr., RE 411, PageID # 12421–22, and the district court granted judgment as a matter of law on Plaintiffs' misrepresentation claim, Nov. 6, 2018 Trial Tr., RE 424, PageID # 15232. Even if this theory could meet the amorphous "contrary-to-TVA's-will" test, Plaintiffs' failure even to argue that the majority of their six theories involve conduct contrary to TVA's will raises again the need for a new trial, because it is

"impossible . . . to decide which theory [or theories] of liability persuaded the jury." *Wilburn*, 139 F.3d at 366.

In sum, there is not only substantial disagreement as to the standard for derivative immunity that should govern, but also whether Jacobs would be immune for conduct based on Plaintiffs' theories of liability under *either* standard.

## IV. These Controlling Questions of Law Will Advance the Termination of the Litigation.

As the district court found—and Plaintiffs do not dispute—its immunity order involves controlling questions of law.  Determining the legal test for derivative immunity and how it applies are legal issues.  *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004); *Carico v. Benton*, 68 F. App'x 632, 635 n.2 (6th Cir. 2003).

Plaintiffs nonetheless claim that resolving these legal questions will not advance the termination of *Adkisson*, because a ruling for Jacobs would still necessitate "substantial additional fact-finding" to determine whether Jacobs is immune and a new threshold determination as to TVA's immunity under *Thacker*. Ans. at 20–21.  Plaintiffs are mistaken.

Plaintiffs already presented their evidence for how Jacobs allegedly violated the SWSHP and Jacobs' contract with TVA at the Phase I jury trial.  Whether the

evidence presented was sufficient to defeat derivative immunity is a legal question, as the district court recognized.  Memo. Op. & Order, RE 759, PageID # 23097, 23101 n.11.  Plaintiffs have not identified *any* additional "fact-finding" needed to resolve derivate immunity under either the *Campbell-Ewald* test or the district court's "will-of-the-government" test.

Whether TVA is immune under *Thacker*'s two-part test is also a legal question, and as the district court recognized, Jacobs "may very well be entitled to immunity in light of *Thacker*."  Memo. Op. & Order, RE 759, PageID # 23120.  As to step one, Plaintiffs contend "TVA's cleanup efforts originated from power generation—an indisputably commercial activity."  Ans. at 18.  But the activity at issue here is ***oversight*** of the ***remediation***, a quintessential government function.  As Jacobs explained (and Plaintiffs ignore), TVA was designated as the "lead [federal] agency authority" under CERCLA and exercised power delegated from the President to manage the cleanup.  Pet. at 23 (quoting *Adkisson I*, 790 F.3d at 643–44).  The President cannot delegate that authority to a private party.  Exec. Order No. 12580(e)(1) (1987) ("functions vested in the President by Section[] 104(a) . . . of [CERCLA] are delegated to the heads of . . . agencies").

As to step two, Plaintiffs argue the litigation cannot constitute grave interference with TVA's role in the cleanup, because state tort law "seeks to ensure

11

that TVA (and the contractors it employs) facilitates a safe workplace." Ans. at 18. But that proves Jacobs' point. Imposing a standard of care under state tort law necessarily interferes with TVA's authority as lead federal agency to itself determine how the cleanup should be conducted under *federal* law. *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1026 (9th Cir. 2020) (recognizing a state's "power plainly includes the ability to regulate safety through common-law tort claims"). Nor do Plaintiffs dispute that imposing potentially significant liability on contractors would substantially disincentivize their participation in remediation activities, thereby making CERCLA cleanups more difficult and expensive for the Government.

Plaintiffs have identified *no factual disputes* relevant to this inquiry. As a result, the issue is ripe for decision either by the district court on remand or by this Court should it choose to reach the issue. *Yamaha*, 516 U.S. at 205. Appellate guidance now will expeditiously move this long-running case toward resolution.

## CONCLUSION

Granting review will likely resolve the cases of 342 plaintiffs, avoid dozens of jury trials, and correct this case's troubling trajectory. The district court recognized the importance of its immunity order. This Court should too and grant Jacobs' Petition.

12

Dated:  April 19, 2021                    Respectfully submitted,


/s/ Theodore J. Boutrous, Jr.

Theodore J. Boutrous, Jr.
Theane Evangelis
Peter S. Modlin
Diana M. Feinstein
Jeremy S. Smith
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, California 90071-3197
Telephone:  (213) 229-7000
Facsimile:  (213) 229-7520
Email:  TBoutrous@gibsondunn.com

Dwight E. Tarwater
Catherine Williams Anglin
PAINE TARWATER BICKERS, LLP
900 S. Gay St., Suite 2200
Knoxville, Tennessee 37902-1821
Telephone:  (865) 525-0880
Facsimile:  (865) 229-7441

James F. Sanders
J. Isaac Sanders
William J. Harbison II
NEAL & HARWELL, PC
1201 Demonbreun St., Suite 1000
Nashville, Tennessee 37203
Telephone:  (615) 244-1713
Facsimile:  (615) 726-0573

*Counsel for Jacobs Engineering Group Inc.*


13

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1) and 32(a)(7)(B)(ii) because it contains 2,596 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in New Century Schoolbook LT, size 14.

Dated:  April 19, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2021, the foregoing document was filed with

the Clerk of Court.  A copy of the reply will be served via electronic mail upon the

following:

Louis W. Ringger, III
GREG COLEMAN LAW PC
800 S. Gay Street, Suite 1100
Knoxville, TN 37902
Telephone:  (865) 247-0080
Email: billy@gregcolemanlaw.com
*Service by overnight mail as well.*

Gregory F. Coleman
GREG COLEMAN LAW PC
800 S. Gay Street, Suite 1100
Knoxville, TN 37902
Telephone:  (865) 247-0080
Email: greg@gregcolemanlaw.com
*Service by overnight mail as well.*

Adam A. Edwards
GREG COLEMAN LAW PC
800 S. Gay Street, Suite 1100
Knoxville, TN 37902
Telephone:  (865) 247-0080
Email: adam@gregcolemanlaw.com

Mark E. Silvey
GREG COLEMAN LAW PC
800 S. Gay Street, Suite 1100
Knoxville, TN 37902
Telephone:  (865) 247-0080
Email: mark@gregcolemanlaw.com

Justin G. Day
GREG COLEMAN LAW PC
800 S. Gay Street, Suite 1100
Knoxville, TN 37902
Telephone:  (865) 247-0080
Email: justin@gregcolemanlaw.com

William A. Ladnier
GREG COLEMAN LAW PC
800 S. Gay Street, Suite 1100
Knoxville, TN 37902
Telephone:  (865) 247-0080
Email: will@gregcolemanlaw.com

Gary A. Davis
DAVIS & WHITLOCK, PC
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone:  (828) 622-0044
Email:  gadavis@enviroattorney.com

James S. Whitlock
DAVIS & WHITLOCK, PC
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone:  (828) 622-0044
Email:  jwhitlock@enviroattorney.com

Jeff Friedman
FRIEDMAN, DAZZIO, ZULANAS & BOWLING, P.C.
3800 Corporate Woods Drive
P.O. Box 43219
Birmingham, AL 35242
Telephone:  (205) 278-7000
Email:  jfriedman@friedmanleak.com

Keith D. Stewart
Stewart Dupree, PA
625 Market Street, 14th Floor
Knoxville, TN 37902
Telephone:  (865) 437-5081
Email:  keithdstewart@gmail.com

John B. Dupree
BRIDGEFRONT LAW GROUP, PLLC
616 W. Hill Avenue, 2nd Floor
Knoxville, TN 37902
Telephone:  (865) 223-5184
Email:  johnbdupree14@gmail.com

John Tyler Roper
THE ROPER LAW FIRM
625 Market Street
Knoxville, TN 37902
Telephone:  (865) 888-9995
Email:  TylerRoperlaw@gmail.com

James K. Scott
JAMES K. SCOTT ASSOC., P.A.
713 Market Street
Knoxville, TN 37902
Telephone:  (865) 254-8739
Email:  jimscott264@gmail.com

Counsel for Plaintiffs in Case No. 3:13-CV-505; No. 3:13-CV-00666; No. 3:14-CV-00020; No. 3:15-CV-00017; No. 3:15-CV-00274; No. 3:15-CV-00420; No. 3:15-CV-00460; No. 3:15-CV-00462; No. 3:16-CV-00635; No. 3:16-CV-00636 (consolidated).

I further certify that a copy of the reply will be served via electronic mail and

overnight mail upon:

Hon. Thomas A. Varlan
Howard H. Baker, Jr. United States Courthouse
800 Market Street, Suite 143
Knoxville, Tennessee 37902
varlan_chambers@tned.uscourts.gov


Dated:  April 19, 2021    Respectfully submitted,

           /s/ *Daniel Rubin*
           Daniel Rubin